# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL A. PATTERSON, )
)
                Plaintiff, )
)
vs. ) Case No. 08-2060-EFM-DWB
)
GOODYEAR TIRE AND )
RUBBER COMPANY, )
)
                Defendant. )
)

# **MEMORANDUM AND ORDER**

Before the Court is Plaintiff's "Motion and Memorandum in Support of Reconsideration of the Court's Memorandum and Order (Doc. No. 119)." (Doc. 128, sealed.) Defendant filed a memorandum in opposition (Doc. 113), but Plaintiff failed to file a reply memorandum and the time to do so has now expired. D. Kan. Rule 6.1(d)(1).

The Order in question related to the following motions to compel, all of which were filed by Plaintiff:

    1.    Plaintiff's Motion to Compel Answers to Request for Productions (Doc. 45);

1

    2.     Plaintiff's Motion to Compel Answers to First Interrogatories and Request for Production of Documents and Things (Doc. 86); and

    3.     Plaintiff's Motion to Compel Answers to Second (Third) Request for Production of Documents (Doc. 96).

The Court's prior order granted in part and denied in part the enumerated motions. (*See generally* Doc. 119.)[1] Having reviewed the submissions of the parties, the Court is prepared to rule on Plaintiff's Motion to Reconsider.

## DISCUSSION

Whether to grant or deny a motion for reconsideration is committed to the sound discretion of the court. ***Youell v. Grimes,*** 168 F. Supp. 2d 1233, 1235 (D. Kan. 2001). A motion to reconsider gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence. ***Comm. for the First Amendment v. Campbell***, 962 F.2d 1517, 1523 (10th Cir. 1992). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or applicable law or if the party produces new evidence that could not have been obtained through the exercise of due diligence. ***Voelkel v. Gen. Motors Corp.***, 846 F. Supp. 1482, 1483 (D. Kan. 1994), *aff'd*, 43 F.3d 1484,

---

[1] Prior to issuing its order on the motions to compel, the court held a lengthy in-person hearing to allow counsel to fully argue the substance of these motions.

1994 WL 708220 (Table) (10th Cir. 1994). "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel*, 846 F. Supp. at 1483.

Plaintiff contends that "there were several factual errors contained in the Court's Memorandum and Order."[2] (Doc. 128, sealed, at 2.) It was not until he received additional discovery responses from Defendant, however, that Plaintiff felt he had "sufficient facts to justify a Motion for Reconsideration." (*Id*.) This supplemental discovery from Defendant "form[s] the basis for this motion." (*Id*.) As such, the Court will analyze the relevant portions of Defendant's supplemental discovery responses to determine if of it constitutes "new evidence that could not have been obtained through the exercise of due diligence." *Voelkel*, 846 F. Supp. at 1483.

    **A.**     **Personnel Files**.

        **1.**     **Decision-makers**.

            **a)**     **BK.**

---

[2] Plaintiff also states that "The Court denied the motions as to plaintiff's request for an adverse inference instruction, defendant's computer and electronic materials, and certain personnel records. Because of the numerous issues and motions presented, it appears that there was some confusion. Consequently, the Court's order in regard to these motions appears to be based on incorrect facts." (Doc. 128, sealed, at 3.) To the extent there was "confusion" regarding the substance of any of Plaintiff's motions and/or arguments, the confusion was the result of Plaintiff's shotgun approach to presentation of his arguments both in writing and during the oral argument.

Plaintiff had requested the "complete personnel file" of, and performance evaluations for, "BK," whom Plaintiff has identified as a decision-maker. (Doc. 43-3, at 13; Doc. 128, sealed, at 4-6.) The Court determined that only documentation relating to BK's performance evaluations or discipline is discoverable, in addition to any agreements relating to the separation of his employment with Defendant. (Doc. 119, at 7.) The Court was informed at the hearing that Defendant had previously produced BK's performance evaluations in its possession (for 2001, 2002, and 2007).[3] Defendant attested that King indicated that he received an evaluation for one other year but that evaluation had not been located. Defendant was directed to attempt to locate this evaluation and produce the same. If the document could not be located, Defendant was to submit a sworn affidavit regarding the effort that was taken to locate the document.[4]

Plaintiff argues that BK's deposition transcript indicates he was reviewed on a yearly basis. (Doc. 128-1, sealed, at 2.) Unfortunately for Plaintiff, that deposition took place on November 11, 2008 – more than four months before the hearing on Plaintiff's motions to compel. Thus, this does not constitute newly acquired evidence.

---

[3] Defendant indicated that it is not unusual that King was not evaluated in certain years as a result in differences in management.

[4] Defendant has filed the subsequently drafted affidavit with the Court. (Doc. 123.)

To the extent this constitutes a factual mistake, Plaintiff did nothing to correct it at the hearing. Even assuming a factual error occurred, it was not significant enough to justify overturning the Court's previous ruling. Further, Plaintiff has produced no evidence to indicate that Defendant actually destroyed any evidence. Rather, Plaintiff relies, at best, on inferences and conclusory assumptions (regarding what documents may have existed and what such documents may have contained) to argue an adverse inference instruction is warranted. (*See* Doc. 128, at 5-6, 8.) The Court finds this to be insufficient.

The affidavit submitted by Defendant enumerates the efforts of its Human Resources Services Manager in Topeka to locate any additional documents regarding BK. (*See* Doc. 123-1.) The Court finds these efforts to be reasonable and has been presented with no evidence that would support the drawing of a negative inference relating to the absence of these performance evaluations.

The Court also ordered Defendant to produce a print out of the "GEM screen" (a summarized employment history) regarding BK, if such a document regarding him was available. (Doc. 119, at 8-9.[5]) Defendant produced the screen, but did not provide Plaintiff with a key to interpret the various codes used.[6] Not

---

[5] Defendant was also ordered to provide the GEM screen for McCauley and Burns, if available.

[6] Defendant notes that Plaintiff never requested the key. (Doc. 133, at n.3.)

surprisingly, this apparently resulted in Plaintiff misinterpreting the information contained in the report. (*See* Doc. 128, sealed, at 5-6; Doc. 133, at 5-6.) Suffice it to say, nothing about the report as it was explained by Defendant in the context of the proper codes would justify reconsideration of the Court's prior decision. The Court does, however, order Defendant produce a key to interpret the codes on the GEM screen.

### b) **Tony McCauley and Mike Burns**.

Plaintiff argues that defense counsel's comments at the motion to compel hearing regarding the absence of performance evaluations for these two individuals were directly controverted by subsequently produced information. (Doc. 128, sealed, at 6-8.) Plaintiff contends that it is "reasonable to conclude that the information contained in the non-produced performance evaluations would be adverse to the defendant and that additional evidence in support of plaintiff's claims would be found in these missing records." (*Id.*, at 8.)

Plaintiff concedes that Defendant has submitted the affidavit of a current human resources employee on the issue. (*Id.*) According to Plaintiff, however, the affidavit is insufficient because the employee is "new" and "never knew or even met with any of the persons whose records are being sought." (*Id.*, at 8-9.) Plaintiff continues that "Defendant had every chance to get this information from

6

the very employees whose records were being sought, or from their direct supervisors, but deliberately chose not to do so." (*Id.*, at 9.)

The Court has reviewed the affidavit in question and finds that Defendant complied with the Court's order and made a reasonable effort to locate any additional documentation, including contacting the individuals to whom McCauley and Burns reported. (Doc. 123-1.) As Defendant represents to the Court, "[t]he fact remains that evaluations other than those created under the current human resources management have not been located, if they ever existed." (Doc. 133, at 8.) The Court finds no sufficient basis to reconsider its prior Order. Further, given Defendant's efforts and explanation, there is no evidence to support the drawing of an adverse inference relating to the absence of this documentation. Finally, the Court finds no justification to reopen discovery to allow additional depositions on the issue, as requested by Plaintiff.

> **2. Plaintiff's personnel records prior to "last chance agreement."**

Plaintiff argues only that his earlier personnel records are relevant to these proceedings – basically the same argument that was made on his behalf at the hearing. Plaintiff has presented no new evidence or law to support reconsideration of this issue. As previously stated, "[a] motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that

7

previously failed." *Voelkel*, 846 F. Supp. at 1483. The Court finds no sufficient basis to reconsider its prior ruling on this issue.

### 3. Similarly-situated employees.

Plaintiff's discovery also sought the complete personnel files of 37 individuals listed in an exhibit to Defendant's response to Plaintiff's EEOC complaint. (Doc. 97-9.) According to Plaintiff, all 37 of these employees were disciplined for attendance issues. The Court held that of this group of 37, only employees who entered last chance agreements with Defendant would constitute the appropriate "similarly situated" group.

Plaintiff contends that Defendant "has produced limited documents in response to this order, such as selected attendance cards, the last chance agreements, and a few call in reports." (Doc. 128, sealed, at 11.) Plaintiff demands that Defendant be required to produce the "complete personnel records of the 37 employees as originally requested," and the production should include FMLA reports, gatehouse reports and payroll reports. (*Id.*, at 11-12.)

Defendant responds that it understood the Court's Order "to require production of attendance cards and disciplinary records from the personnel files of the employees who had last chance agreements." (Doc. 133, at 9-10.) Defendant continues by stating that

8

> Plaintiff's Rule 34 requests had not requested the separate files that contain medical records, FMLA records or accident and sickness records for such employees. Historical gatehouse records do not exist.

(Doc. 133, at 10.)

Defendant is correct that Plaintiff's underlying discovery request did not seek FMLA records or medical information about these individuals, but rather sought "complete personnel files." (*See* Doc. 97-2, at Request No. 6.) Plaintiff has acknowledged that HIPAA precludes employers "from putting employees['] medical records in personnel files . . . ." (Doc. 114, at 6.) Because Plaintiff was aware of this, he could not have reasonably expected a request for personnel files to have included information relating to medical issues.

Defendant contends the information it produced regarding these employees was "consistent with the information that had previously been produced by defendant related to other employees who had been terminated for violation of last chance agreements and consistent with the context of the order relating to the personnel documents on BK, Burns and McCauley." (Doc. 133, at n.5.) The Court's Order, however, instructed Defendant to produce the "personnel files" of these individuals. (Doc. 119, at 10.) The Court did not make limitations regarding portions of these personnel files that would be irrelevant as it did with BK, McCauley, and King. (*See id.*, at 8 (regarding scope of relevant information

9

regarding Burns and McCauley).) The scope of relevant information regarding other employees with last chance agreements, as similarly situated employees of Plaintiff, is obviously broader than it would be for Plaintiff's supervisors. Thus, all information contained in the personnel files of these employees with last chance agreements is to be produced.

Plaintiff's remaining arguments on this issue are merely a further attempt to "dress up arguments that previously failed." *Voelkel*, 846 F. Supp. at 1483. The Court finds no legitimate reason to reconsider its previous ruling on this issue.

**B.	Adverse Inference Instruction**.

Plaintiff argues that the Court was incorrect to rely on *Energy West Mining Co. v. Oliver*, 555 F.3d 1211, at n. 2 (10th Cir. 2009), for the proposition that there must be a showing of intentional destruction or bad faith on the part of the non-producing party prior to the Court giving an adverse inference instruction.[7] (Doc.

---

[7]Plaintiff further contends *Energy West* is distinguishable because it involves allegations of an agency violating the due process rights of an employer because it destroyed an employee's 19 year old worker's compensation claim. (*Id*.) Plaintiff argues the present situation "involves the failure to preserve documents that one is statutorily required to preserve" pursuant to 29 C.F.R. § 1602.14. That section requires the preservation of certain personnel or employment records "made or kept by an employer." When a charge of discrimination is filed, "the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action." *Id*. The section specifically states that "personnel records relevant to the charge" would include "all other employees holding positions similar to that held or sought by the aggrieved person . . ." *Id*. As Defendant correctly indicates, there is nothing about this section that requires the preservation of personnel records of the aggrieved party's supervisors. (Doc. 133, at 11; *see*

128, sealed, at 12.) The Court notes that this issue does not rely on the introduction of newly discovered evidence or intervening changes in controlling law. Rather Plaintiff merely disagreed with the Court's interpretation of the law. As such, there is no reason why it should have been raised within ten days of the Court's prior ruling. D. Kan. Rule 7.3. Nevertheless, the Court revises its prior ruling to hold that a showing of bad faith or intentional destruction of evidence is not necessarily required in order to properly give such an instruction – only that Defendant knew or should have known that litigation was imminent and that Plaintiff was prejudiced by the destruction of evidence. ***Hatfield v. Wal-Mart Stores, Inc.***, 335 Fed.Appx. 796, at *7 (10th Cir. 2009); citing ***103 Investors I, L.P. v. Square D Co.***, 470 F.3d 985, 988-89 (10th Cir. 2006).

In the present case, however, Plaintiff has not established that any evidence was actually destroyed by Defendant. (*See* Doc. 119, at 5-6.) Further, Plaintiff is only speculating that if any of the documents at issue previously existed, they would contain information beneficial to Plaintiff's case. Plaintiff has not presented a single piece of evidence, such as deposition testimony regarding the contents of any such performance evaluations, that would support this position. Even applying the more lenient standard for an adverse inference instruction as stated in ***Hatfield***,

---

*also* 29 C.F.R. § 1602.14.)

*supra*, Plaintiff has failed to establish that such an instruction is appropriate in the matter before the Court.[8]

### C. Defendant's Computer and Electronic Materials.

The Court has carefully reviewed Plaintiff's arguments regarding its prior ruling on the issue of Defendant's computer and electronic materials. The Court agrees with Defendant's assertion that "Plaintiff offers no grounds for reconsideration of this issue. Plaintiff simply repeats the same rejected arguments." (Doc. 133, at 11.) Because Plaintiff offers nothing substantively new, the Court will not reconsider the issue and merely incorporates by reference the relevant portion of its prior ruling. (*See* Doc. 119, at 12-16.)

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion and

---

[8] Plaintiff also argues that the Court did not address his request for monetary sanctions in connection with his motion to compel. (Doc.128 at 15) (Sealed). Plaintiff did request its reasonable costs in preparing the motion to compel (Doc. 96), and in the last sentence of his reply asked for "sanctions in the form of an adverse inference instruction as well at [sic] attorney fees." (Doc. 114, at 12.) These two brief statements were the totality of Plaintiff's discussion of monetary sanctions. The motion refers to monetary sanctions under "FRCP 27(a)(4)(A)." (Doc. 96.) This citation is obviously a typographical error since Rule 27 deals with depositions to perpetuate testimony. Presumably Plaintiff sought sanctions pursuant to Fed. R. Civ. P. 37. Since the court granted in part and denied in part Plaintiff's motion to compel, the operative subsection is Rule 37(a)(5)(C), which allows the court to apportion the reasonable expenses for the motion. However, to the extent that Plaintiff is now complaining that the court did not address his request for monetary sanctions, that fact was known to Plaintiff at the time the court's order was entered. Any motion for reconsideration on that issue should have been made immediately, but it was not. Plaintiff's motion for reconsideration about monetary sanctions is therefore untimely.

Memorandum in Support of Reconsideration of the Court's Memorandum and Order (Doc. No. 119)" (Doc. 128) is **DENIED**.

Defendant is, however, **ORDERED** to provide Plaintiff with a key to the codes contained in the GEM screens previously produced, as well as additional information that may be contained in the personnel files of similarly situated employees, as set forth more specifically above. This shall be produced by **January 22, 2010.**

Dated at Wichita, Kansas, on this 30th day of December, 2009.

      s/ DONALD W. BOSTWICK
      DONALD W. BOSTWICK
      United States Magistrate Judge