# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL A. PATTERSON

        *Plaintiff*,

  vs.

GOODYEAR TIRE AND RUBBER
COMPANY,

        *Defendant.*

Case No. 08-2060-EFM

## MEMORANDUM AND ORDER

Plaintiff Michael A. Patterson worked for Defendant Goodyear Tire and Rubber Company for approximately thirteen years before being terminated in February 2007. In April of 2006, Plaintiff was placed on a last chance agreement in which he agreed to call a designated manager to report any absences from work. In late 2006, Plaintiff took FMLA leave for a heart condition. After returning to work in January 2007, and approximately one month later, he missed several days of work and did not call his designated manager to report his absence. Defendant terminated Plaintiff's employment. Plaintiff alleges discrimination and retaliation in violation of the ADA and interference and retaliation under the FMLA.

Before the Court is Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 139), Defendant's Motion for Summary Judgment (Doc. 143), and Defendant's Motion to Exclude Expert Testimony (Doc. 162). For the following reasons, the Court denies Plaintiff's Motion for Leave to File an Amended Complaint, grants in part and denies in part Defendant's Motion for Summary

Judgment, and denies as moot, and without prejudice to refiling, Defendant's Motion to Exclude Expert Testimony.

## I. Factual and Procedural Background[1]

Plaintiff Michael Patterson began working for Goodyear Tire and Rubber Company ("Goodyear") in 1994 as a pipefitter. In 2006, Patterson worked on the first shift. His supervisor was Bill King, but he was also supervised by maintenance job planners Bob Collie and Steve Uhl.

Patterson was a member of the union and was employed under a union contract. Goodyear has a "positive discipline" system under which employees are disciplined for various workplace violations in Steps 1 through 5, with Step 5 being termination of employment.

On January 14, 2005, Goodyear's records indicate that Patterson was counseled and placed on Step 1 for being late. Patterson does not recall this. Goodyear's records indicate that Patterson was placed in Step 2 for attendance on April 6, 2005. Patterson does not recall why he missed work.[2] On May 23, 2005, Patterson was counseled for missing work the day before. He does not recall why he missed work. On May 29, 2005, Patterson was counseled about an unexcused absence the day before and was moved to Step 3. He does not recall why he missed work.

On August 20, 2005, Goodyear counseled Patterson for missing work but did not place him on Step 4. Patterson testified that he talked to Bill King about having the day off because he was waiting for his medication, Adderall, to arrive from UPS.

---

[1]In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party. If, however, a party failed to provide support for its fact and the fact was controverted, the Court disregarded it.

[2]Plaintiff controverts that he was absent on April 6 citing a weekly payroll record. The payroll record shows that Plaintiff was paid for a full day's work on April 6; however, it also indicates that Plaintiff was absent April 5.

Goodyear's records indicate that Patterson was counseled on October 5, 2005 for missed work and placed in Step 4. The record also indicates that he was sent home for the day.[3]

Patterson was absent on November 18 and 19, 2005. He requested and was granted FMLA leave.

In January 2006, Patterson missed a day of work. He was counseled but not placed in Step 5.

Patterson took one day of FMLA leave in February 2006 and six days in March 2006 for problems associated with depression and ADHD.

On April 7, 2006, Patterson missed work because there had been a storm the night before, and he needed to clear his driveway of some fallen trees. Patterson was placed in Step 5 and sent home for two days in anticipation of his termination, also known as a "two day cool."

On April 20, 2006, Patterson signed a "last chance" agreement assenting to certain terms and conditions in exchange for continued employment. Patterson testified that he signed the agreement because that was the only way he would keep his job. The beginning of the agreement provides that "[i]t is undisputed that the actions of Mr. Mike Patterson regarding his attendance record could have reasonably led the company to the employment actions taken of termination Step V. The Company felt that you warranted one more chance under the following conditions."

Paragraph 3 of the agreement provides:

Any unexcused absence will be grounds for immediate discharge. Even excused absences will be carefully scrutinized. Any suspicious circumstances or failure to report a medically necessary absence to the employer as soon as it is known may be

---

[3]Plaintiff testified that he does not recall being sent home on October 5, but he testified that he could not deny it. Plaintiff also cites to the weekly payroll record and attendance report which shows that he was paid for the day. Goodyear's records also indicate, however, that Plaintiff would be sent home for the day but would be paid. In any event, Plaintiff does not controvert that he was placed in Step 4.

grounds for immediate discharge. It is agreed by Mr. Patterson and his representatives that reporting off for any reason through the gatehouse alone will be insufficient. In addition, he must directly call off any absence to the RTOT Maintenance Manager or the PM Coordinator, or on shift Area Manager (numbers will be provided). Failure to do so will be considered a no report and result in the customary disciplinary action up to and including discharge.

Paragraph 5 provides that the agreement "shall remain in effect for a period of one year from the date of this letter." The requirement that an employee report absences to a designated manager is commonly included in last chance agreements entered between Goodyear and an employee who is permitted to return to work on a last chance agreement after termination for absenteeism.

In the summer of 2006, Patterson was hospitalized for heart problems and had to have stints implanted. Patterson took FMLA leave. Patterson returned to work on or about August 15, 2006. He experienced chest pains on September 13, 2006 and had to leave work. Patterson went on extended FMLA leave. Patterson was on medical leave when a work stoppage occurred. In October 2006, Patterson's union went on strike.[4] In January 2007, the strike ended, and the union employees returned to work.[5]

On December 28, 2006, Patterson received a doctor's note stating that he could return to work without restrictions as of January 1, 2007. He returned to work on January 5, 2007. Patterson requested and King approved two days of vacation for Patterson to work on his vehicles in late January. On the third day, January 27, 2007, he called the gatehouse to request another day of vacation, but he did not contact one of the managers designated in the last chance agreement.

---

[4]Defendant cites to the Pretrial Order for support for this contention. The Pretrial Order, however, does not support this fact because there is no stipulation as to the union strike. Plaintiff does, however, provide an affidavit in which he avers that his union went out on strike on or about October 5, 2006.

[5]Defendant again cites to the Pretrial Order, but there is no support for this fact in the document. Plaintiff, however, agrees that this fact is uncontroverted. The parties disagree whether Plaintiff was on extended FMLA leave during the strike.

Patterson was granted a vacation day.

On January 28, 2007, King reminded Patterson of his last chance agreement.[6] Patterson had a copy at home, and he knew that the terms of the agreement were in place for one year following the date of the agreement.

Patterson missed work on February 2 and 3, 2007. On Friday, February 2, 2007, Patterson called the gatehouse at 5:49 a.m. to request a day of vacation for personal sickness. Patterson testified that when he woke up on the morning of February 2, he felt like he was having an anxiety attack or heart attack. He did not ask the guard to transfer him to King to report his absence. He did not report his absences on February 2 and 3, 2007, to King, Collie, or the Shift Area Manager.

After calling the gatehouse, Patterson called his personal physician, Dr. Michael Keehn, and left a message. Dr. Kheen's office called back, and Patterson told him that he was having pains in his upper chest and in his jaw line. Patterson told Dr. Kheen that he had taken a nitro, and Dr. Kheen told him to stay in bed for the weekend and come in on Monday. If Patterson experienced advanced problems, Dr. Kheen directed him to go to emergency room. Patterson testified that he could have called his supervisor, King, had he remembered to do so, but he forgot.

At 8:49 p.m. on February 2, 2007, Patterson reported to the gatehouse that he was taking a vacation day the next day for personal illness. He only reported his absence to the gatehouse.

Patterson saw his doctor on Monday, February 5, 2007. Dr Kheen's notes indicate that Patterson complained of head congestion and fever. Dr. Kheen diagnosed Patterson with an upper respiratory infection and cold virus. During this visit, Patterson did not complain of an anxiety attack or a heart attack.

---

[6]Although Plaintiff controverts that King specifically reminded him about the call-in requirements of the last chance agreement, he testified that King reminded him that he was on a last chance agreement.

Patterson returned to work on February 6, 2007, and he brought a note signed by Dr. Keehn dated February 5, 2007. The note said of Patterson: "He was ill and unable to work on 2-3 Feb. 07. Return to work 6 Feb. 07."

Upon returning to work, Patterson went to the dispensary and filled out a Return to Work Questionnaire. On the questionnaire, Patterson checked "yes" to the question, "Are you released to full duty?" He checked "no" to the question "Are you taking prescription medication?" To the question, "What was your illness or injury?," he indicated "bad sore throat, & conjistion [sic]." Patterson checked "no" to the question, "Have you requested or been approved for FMLA related to this condition?" In the past, when requesting FMLA leave, Patterson responded "yes" to "Have you requested or been approved for FMLA related to this condition?"

After leaving the dispensary on February 6, Patterson talked with King and King's union representative. Patterson told King how he felt when he woke up Friday morning and what the doctor had told him. Patterson testified that he told King that he had a sore throat and congestion, what he wrote down on his Return to Work Questionnaire. King testified that Patterson did not tell him that he had a panic attack, heart condition, or a disability that caused him to miss work on February 2 and 3.

King told Patterson that his failure to properly report his absences was a violation of his last chance agreement, and he placed Patterson on a "two-day cool" pending termination. Patterson did not tell Goodyear he was requesting FMLA leave for February 2 and 3, 2007. Goodyear terminated Patterson on February 13, 2007. King testified that he terminated Patterson because Patterson did not comply with his last chance agreement.

Patterson began having panic attacks in 1996 or 1996 and began seeing a psychiatrist, Dr. Cornelia Daluz. Dr. Daluz treated Patterson for Attention Deficit Hyperactivity Disorder ("ADHD"), anxiety, and depression. Patterson takes Adderall for the ADHD. In 2002, Dr. Daluz sent a letter to King indicating that Patterson had been under his care for the past few years, and he had been receiving treatment for ADHD, depression, and anxiety. Patterson took one day of FMLA leave in February 2006 and six days in March 2006 for problems associated with depression and ADHD.

Patterson filed a charge with the Kansas Human Rights Commission on August 17, 2007. In this charge, he asserted that Goodyear discriminated against him on the basis of sex. He filed an amended charge on October 25, 2007 contending that Goodyear discriminated against him because he was disabled. In the charge, Patterson stated that he was diagnosed with "severe chronic depression, acute anxiety disorder, and Attention Deficit Hyperactivity Disorder, which is not completely controlled Medication."

Plaintiff filed his complaint on February 5, 2008, asserting several claims. On July 16, 2010, during the parties' pretrial conference, Defendant objected to Plaintiff's claim of retaliation under the ADA because it was not alleged in the original complaint. In the pretrial order, Judge Bostwick directed Plaintiff to file a written motion seeking leave to amend his complaint to assert a retaliation claim under the ADA and that the motion would be taken up in connection with the proposed dispositive motions.

Plaintiff filed a motion for leave to file an amended complaint. Defendant filed a motion for summary judgment. Defendant also has a pending motion to exclude expert testimony.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[7] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[8] A fact is "material" when "it is essential to the proper disposition of the claim."[9] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[10]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[11] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[12]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[13] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[14] "To accomplish this, the

---

[7] Fed. R. Civ. P. 56(a).

[8] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[9] *Id.*

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[12] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[13] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[14] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[15] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[16] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[17]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[18]

## III. Analysis

Plaintiff contends that Defendant discriminated and retaliated against him under the ADA. In addition, Plaintiff asserts that Defendant retaliated against him and interfered with his rights under the FMLA. The Court will address each claim.[19]

## A. ADA Claims

### *Exhaustion and Jurisdictional Issues*

Defendant contends that this Court does not have subject matter jurisdiction over Plaintiff's ADA retaliation claim or over two of Plaintiff's alleged disabilities, sleep disorder and heart condition, because he failed to exhaust his administrative remedies on these issues. Under the ADA, a plaintiff must exhaust his administrative remedies before filing suit.[20] "In the Tenth Circuit,

---

[15]*Adler*, 144 F.3d at 671.

[16]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[17]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[18]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[19]Defendant first argues that Plaintiff is equitably estopped from asserting his claims by the last chance agreement which provides, among other things, that "[a]ny outstanding grievances, claims, or complaints for attendance against the Goodyear Tire & Rubber Company or Local 307 are hereby withdrawn." The Court finds Defendant's argument to be without merit.

[20]*Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

exhaustion of administrative remedies is a jurisdictional prerequisite to suit."[21]  "[T]he purposes of exhaustion are: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim."[22]

In determining whether a plaintiff exhausted his administrative remedies, the court must "determine the scope of the allegations raised in the EEOC charge" and construe those charges liberally.[23]  However, a court's "inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge."[24]  "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[25]

Plaintiff initially filed a charge with the Kansas Human Rights Commission (KHRC) asserting discrimination on the basis of sex.  He has since dropped this claim.  Plaintiff then filed an amended charge in which he alleged discrimination on the basis of a disability.  Specifically, his charge provides:

I.      I am an individual with a qualified disability.

II.     I am diagnosed with severe chronic depression, acute anxiety disorder, and Attention Deficit Hyperactivity Disorder, which is not completely controlled Medication.

III.    From January of 2004, to February of 2007, I sought reasonable accommodations from my employer.

---

[21]*Id.*

[22]*Id*. at 1185 (internal quotations and citations omitted).

[23]*Id.* at 1186.

[24]*Id.* (emphasis in original).

[25]*Id.*

IV.     During those dates, I was not afforded reasonable accommodations.

V.      On February 13, 2007, I was terminated due to my disability.

VI.     I hereby charge The Goodyear Tire & Rubber Company and its representatives with violation of Title I of The Americans with Disabilities Act.


In the KHRC charge, Plaintiff identified three disabilities but did not identify a heart condition or sleep disorder. Plaintiff, however, contends that he properly identified the impairments of a sleep disorder and a heart condition in the pretrial order.[26] Relying on *Poindexter v. Atchison, Topeka & Santa Fe Railway Co.*,[27] Plaintiff argues that he has the option to identify his impairments and the major life activities that are affected by his impairments at trial or in the pretrial order.

In *Poindexter*, the Tenth Circuit determined that the district court erred in submitting the legal issue of impairment and the major life activity affected by the impairment to the jury.[28] In stating its holding, the circuit noted that its holding did not change federal notice pleading requirements and that the plaintiff could choose to clarify his position at trial to prove with particularity the impairment and major life activity affected.[29] Although *Poindexter* may stand for the proposition that a plaintiff does not have to specifically plead the impairment in the complaint, it does not stand for the proposition that a plaintiff can identify specific disabilities in his EEOC or KHRC charge and then file suit asserting different and additional disabilities.

---

[26]The Court notes that Plaintiff did not identify the disability of heart condition or sleep disorder in his complaint, but he specifically identified severe chronic depression, acute anxiety disorder, and Attention Deficit Hyperactivity Disorder. It also does not appear that Plaintiff identified sleep disorder in the pretrial order.

[27]168 F.3d 1228 (10th Cir. 1999).

[28]*Id*. at 1231.

[29]*Id*. at 1232.

In *MacKenzie v. City & County of Denver*,[30] the Tenth Circuit refused to consider an ADA discrimination claim based on the disability of depression because the plaintiff previously only identified one disability, coronary disease, in her EEOC charge.[31]   Because the alleged second disability exceeded the EEOC charge and the plaintiff raised it for the first time on appeal, the circuit would not address the second disability.[32]   Similarly, in *Moore v. City of Overland Park*,[33] the District of Kansas determined that two impairments not included in the plaintiff's EEOC charge were barred because she failed to exhaust her administrative remedies as to these two impairments.[34] The court, therefore, granted the defendant's motion for summary judgment with respect to these two disability claims.[35]

In this case, Plaintiff did not state in his administrative charge that he had a sleep disorder or heart condition.  In contrast, he stated that he was diagnosed with severe chronic depression, acute anxiety disorder, and Attention Deficit Hyperactivity Disorder.  As the circuit has noted, the purpose of the exhaustion requirement is to allow the EEOC or KHRC to conciliate the charge and to give the charged party notice of the alleged violation.  In this case, the charge, nor the other documents in the KHRC file, give notice that Plaintiff claimed discrimination on the basis of these two disabilities because there are no allegations relating to these impairments.  As such, an investigation into Plaintiff's alleged sleep disorder and heart condition would not reasonably be expected to

---

[30]414 F.3d 1266 (10th Cir. 2005).

[31]*Id.* at 1274.

[32]*Id.*

[33]950 F. Supp. 1081 (D. Kan. 1996).

[34]*Id.* at 1086.

[35]*Id.* (determining that plaintiff only raised diabetes in the EEOC charge and therefore, the alleged disabilities of  nicotine addiction and central nervous disorder were precluded).

follow from the charge. Accordingly, Plaintiff did not exhaust his administrative remedies as to these two alleged disabilities.[36] The Court, therefore, grants Defendant's motion for summary judgment as to these two disabilities.

### Discrimination Claim

In the absence of direct evidence of discrimination, a plaintiff may establish discrimination under the ADA under the familiar *McDonnell Douglas* burden-shifting framework.[37] To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate (1) that he is disabled within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he holds or desires; and (3) the defendant discriminated against him because of his disability."[38] Assuming without deciding that Plaintiff meets the first two elements of a prima facie case, the Court will address the third element of a prima facie case of disability discrimination.

"[T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that [he] was terminated because of [his] disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was

---

[36]The Court will separately address Plaintiff's ADA retaliation claim in detail below.

[37]*Jones,* 502 F.3d at 1188-89.

[38]*Id.* at 1189. The ADA was amended on September 25, 2008, but the amended version specifically became effective on January 1, 2009. ADA Amendment Act of 2008 ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553 (2008). Numerous courts have determined that the amendments do not apply retroactively. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261, n. 2 (10th Cir. 2009) (finding it unnecessary to consider the effect of the ADA amendments because the allegedly discriminatory conduct occurred prior to the amendments). *See also LaBrue v. Gab Robins N. Am., Inc.*, 2009 WL 2355785, at *4 (D. Kan. July 29, 2009) (collecting numerous cases in which courts have held that "the ADA amendments do not apply to conduct prior to the effective date of the statute."). In this case, all of the conduct occurred prior to the effective date of the ADAAA. As such, the Court will not consider those amendments.

based on [his] disability.'"[39] The third prong of the test does not impose an "onerous" burden, but it also is "not empty or perfunctory."[40] Plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision."[41]

Plaintiff argues that he establishes the third element because Defendant fired him less than a month after his return from medical leave for a heart attack and immediately after returning to work due to a panic anxiety attack brought on by his disability. "Depending on the specific facts of the case, temporal proximity can contribute to an inference of discrimination."[42] The facts in this case, however, do not warrant an inference of discrimination on the basis of disability.

First, Plaintiff's heart condition is not a disability at issue in this case. As noted above, Plaintiff did not allege in his KHRC charge that his heart condition was a disability, and the Court granted Defendant summary judgment on this issue. In addition, while Plaintiff's heart condition may suffice to be a serious health condition under the FMLA for which Plaintiff requested and received FMLA leave in September 2006, it does not necessarily follow that it is a disability within the meaning of the ADA for which Plaintiff received accommodation.[43] Accordingly, the temporal

---

[39]*Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[40]*Morgan*, 108 F.3d at 1323-24.

[41]*Id.* at 1323.

[42]*Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1157 (10th Cir. 2008) (citing *Butler*, 172 F.3d at 749)).

[43]"[T]he leave provisions of the FMLA are wholly distinct from the statutory definition of 'disability' and an employer's reasonable accommodation obligations covered under the ADA. As courts have recognized in various contexts, 'there may be some parallels between the ADA and FMLA, but applicable regulations explicitly state that ADA's 'disability' and the FMLA's 'serious health condition' are different concepts, and must be analyzed separately.'" *Berry v. T-Mobile USA, Inc*., 490 F.3d 1211, 1219 (10th Cir. 2007) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1295 (11th Cir. 2006) (quoting *Stekloff v. St John's Mercy Health Sys.*, 218 F.3d 858, 861 (8th Cir. 2000)). Plaintiff does not appear to address the distinction between a "serious health condition" under the FMLA and "disability" under the ADA but instead uses his health conditions interchangeably as both.

proximity of one month between Plaintiff's return to work from FMLA leave for a heart condition to his termination is simply not relevant to Plaintiff's disability discrimination claim.

Plaintiff's asserted disabilities that are relevant include depression, anxiety disorder, and ADHD. There is no evidence of any temporal proximity between Plaintiff's request for accommodation for these disabilities and his termination. Although Plaintiff asserts that he was terminated shortly after suffering from a panic attack, there is no evidence that he informed his employer that he had a panic attack on February 2, nor is there evidence that he sought accommodation for this disability at that time.

The Court is uncertain as to Plaintiff's allegations of failure to accommodate. Plaintiff does not appear to bring a failure to accommodate claim because he specifically asserts that the act complained of is Defendant's discriminatory and retaliatory termination in February 2007. However, he then states that Defendant discriminated against him by firing him based on his disability and his attempt to obtain accommodations for his disability. In addition, Plaintiff has a section devoted to Defendant's alleged failure to accommodate him. As such, the Court is less than clear on Plaintiff's position.

However, whether Plaintiff brings a specific failure to accommodate claim or uses it as evidence to support an inference of discrimination is largely irrelevant. Plaintiff provides no evidence as to any specific previous instances that Defendant failed to accommodate him. In fact, Plaintiff argues that Defendant was able to accommodate him with intermittent FMLA leave and did so when he indicated there was a need for it. To the extent Plaintiff argues that Defendant failed to accommodate him in February, there is no evidence that Defendant was aware that Plaintiff needed any accommodation for any disability. As such, there is no temporal proximity between any of

Plaintiff's asserted disabilities or requests for accommodation that gives rise to an inference of discrimination on the basis of his disabilities.[44]

Plaintiff's other asserted reason for an inference of discrimination is based on a statement that King made that Plaintiff was an excellent employee until the last six months because he was missing a lot. This appears to be out of context.[45] In addition, even though King made this statement, Plaintiff fails to demonstrate how the "missing" comment relates to his disabilities. The FMLA leave Plaintiff took during those six months was related to his heart condition. There simply is insufficient evidence to demonstrate an inference of discrimination under the ADA. As such, the Court grants Defendant's motion for summary judgment on this claim.

### Retaliation Claim

With respect to Plaintiff's ADA retaliation claim, there are several issues because this claim was not explicitly stated either in the KHRC charge or the complaint. Defendant first argues that Plaintiff's ADA retaliation claim is barred due to his failure to exhaust administrative remedies. "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box."[46] "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."[47]

---

[44]As will be discussed in the section addressing Plaintiff's FMLA retaliation claim, the one month timeframe between returning from his FMLA leave and his termination may lead to an inference of retaliation on the basis of taking FMLA leave. It does not follow that it also leads to an inference of discrimination on the basis of a disability.

[45]In King's deposition, he testified that in the last six months, Plaintiff would disappear at work and they would not be able to find him.

[46]*Jones*, 502 F.3d at 1186.

[47]*Id.*

Plaintiff concedes that he did not check the retaliation box in his KHRC charge and that he did not use the word "retaliation" in his charge. He argues, however, there is the suggestion of retaliation because he stated that he asked for accommodation and that he was terminated due to his disability.

Construing the charge liberally, as the Court must, the Court finds the charge may encompass a claim for retaliation. Plaintiff stated that he had a disability, sought reasonable accommodations from January 2004 to February 2007, was not afforded reasonable accommodations during those dates, and was terminated on February 13, 2007 due to his disability. The KHRC could have investigated whether Plaintiff was retaliated against because he asked for accommodation for his disability and was not afforded accommodation.[48] Although he did not use the word retaliation or mark the box for retaliation, the Court will liberally construe his charge to include a claim of retaliation.

However, Plaintiff also did not assert an ADA retaliation claim in his complaint. Defendant objected to the inclusion of the claim at the parties' pretrial conference. Magistrate Judge Bostwick reviewed the complaint and determined that the allegations in the section of the complaint directly addressing Plaintiff's ADA claim did not contain specific language asserting a claim of retaliation. He contrasted the ADA claim with the FMLA claim in which he found that the FMLA claim did include a specific retaliation claim. Judge Bostwick directed Plaintiff to file a written motion seeking leave to amend his complaint to assert a retaliation claim to be taken up by the undersigned judge.

---

[48]*Roberts v. Cessna Aircraft Co.*, 289 F. A'ppx 321, 327 (10th Cir. 2008) (citing *Jones*, 502 F.3d at 1194) (stating that requesting accommodation is a protected activity to establish the first prong of a prima facie case of retaliation).

Plaintiff argues in its motion for leave to file an amended complaint that his ADA retaliation claim is based on the same nucleus of facts as his FMLA retaliation claim. He specifically asserts that his ADA retaliation claim is based on the seeking and taking of reasonable accommodation of FMLA leave. Plaintiff contends that his "EEOC complaint expressly asserts retaliatory discharge under FMLA."[49] Because of this express assertion of retaliatory discharge under the FMLA, Plaintiff argues that an agency investigation of the ADA retaliation claim would grow out of the FMLA retaliation claim.

The Court has reviewed the charge, and there is no such express language in the charge. Because there was no express assertion, or even an implied assertion of retaliation for taking leave under the FMLA in the KHRC charge, an agency investigation into an ADA retaliation claim based on taking FMLA leave would not reasonably follow. Even with the Court's liberal reading of the charge to include a retaliation claim, Plaintiff's factual basis was that he sought reasonable accommodations and was *not* afforded those accommodations. This is in direct contrast to his current contention that he was retaliated against on the basis of seeking and *taking* FMLA as an accommodation.[50] Furthermore, as noted above, Plaintiff's heart condition is not properly before the Court as a disability, and the facts on which Plaintiff appears to base his ADA retaliation claim upon is taking FMLA leave for his heart condition.

Finally, even if the Court could conclude that the KHRC charge includes a retaliation claim and also allowed Plaintiff leave to file an amended complaint asserting an ADA retaliation claim,

---

[49]It appears that Plaintiff references his KHRC charge as an EEOC charge. If there was a separate EEOC charge, the Court was not provided with a copy.

[50]As noted above, there are distinctions between the leave provisions of the FMLA and reasonable accommodations under the ADA. *See Berry*, 490 F.3d at 1219.

Plaintiff fails to specifically address the ADA retaliation claim in his summary judgment briefing. Instead, Plaintiff appears to direct the Court to his FMLA retaliation claim.[51] There is no mention of retaliation in his KHRC charge, no mention of retaliation under the ADA in his complaint, and Plaintiff does not specifically address it in his briefing in opposition to Defendant's motion for summary judgment. The Court has given Plaintiff the benefit of the doubt and attempts to discern his arguments relating to this claim, but at some point, it is necessary for Plaintiff to specifically address his ADA retaliation claim. Accordingly, Plaintiff's motion for leave to file an amended complaint to include an ADA retaliation claim is denied, and the Court grants Defendant's motion for summary judgment on Plaintiff's ADA retaliation claim.

## B.  FMLA Claims

Plaintiff also brings an FMLA retaliation and an FMLA interference claim.

### *Interference Claim*

Plaintiff claims that Defendant interfered with his right to FMLA leave. He asserts that he was entitled to FMLA leave for the days in February that he called in sick, and his termination interfered with his right to FMLA leave.[52] Defendant argues that Plaintiff cannot establish an

---

[51]Plaintiff states that "Retaliation will be analyzed in " and does not conclude his sentence but moves on to his FMLA claims.

It also is not entirely clear whether Plaintiff attempts to assert a retaliation claim under the ADA due to Defendant's alleged failure to accommodate him in February 2007 when he called in sick. To the extent he does assert this as a claim, Plaintiff's heart condition is not a disability at issue in this case. Furthermore, there is no evidence that Plaintiff engaged in protected activity as Plaintiff never requested nor indicated that he needed an accommodation or FMLA leave for his sickness on February 2nd and 3rd. As such, he would fail to establish a prima facie case.

[52]To the extent Plaintiff claims his termination was in response to him previously taking FMLA leave in October 2006, the Court will address it as an FMLA retaliation claim rather than as an interference claim. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287-88 (10th Cir. 2007) (discussing the difference in timing of the adverse action with respect to FMLA interference and retaliation claims and finding that retaliation claims are brought "when the employee successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on incidents post-dating [his] return to work." ). Although an FMLA interference claim is not foreclosed when an employee successfully takes FMLA leave and then returns to his position, the interference claim is generally only allowed when the employer's cited reasons for termination all *predate* the plaintiff's return to

interference claim because Plaintiff cannot demonstrate he provided notice, that he was entitled to leave, or that Defendant interfered with any right to FMLA leave. In addition, Defendant argues that the evidence demonstrates that Plaintiff's termination was not related to Plaintiff's exercise or attempted exercise of FMLA rights.

The FMLA entitles eligible employees to a total of twelve work weeks of leave during any twelve-month period because of a serious health condition that renders him unable to perform his job functions.[53] The Act defines "serious health condition" as an illness, injury, impairment, or physical or mental condition that requires inpatient hospital care or continuing treatment by a health care provider.[54] "Under the FMLA, an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].'"[55]

A plaintiff must demonstrate that he put his employer on notice that he might be entitled to leave under the FMLA to succeed on an interference claim under the FMLA.[56] The Tenth Circuit has noted that "[t]he analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA

---

[53] work. *Id.* at 1288. In this case, Defendant's reasons for termination are based on conduct occurring after Plaintiff's return to work. As such, with respect to Plaintiff's FMLA interference claim, the Court will only consider it in relation to his assertion that Defendant allegedly interfered with his right to take FMLA leave for his absences in February 2007, i.e., whether Defendant denied him initial permission to take leave.

[53] 29 U.S.C. § 2612(a)(1)(D).

[54] 29 U.S.C. § 2611(11).

[55] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)).

[56] *See, e.g., Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 787 (8th Cir. 2009); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005); *see also Bryant v. Am. Airlines, Inc.*, 75 F. App'x 699, 701 (10th Cir. 2003) (stating that without some indication to an employer that an employee needs leave, "defendant could not be put on notice such that its duties under the FMLA were triggered.").

rights."[57]  However, a plaintiff must still demonstrate that he provided notice of his need for FMLA leave.[58]  As such, the Court will first consider whether the facts of this case demonstrate that Plaintiff provided notice.

An employee need not expressly assert rights under the FMLA or even mention the FMLA to satisfy this burden; however, he must provide his employer with sufficient information "to make the employer aware that the employee needs FMLA-qualifying leave."[59]  "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."[60]  "[T]he notice must succeed in alerting the employer to the seriousness of the health condition."[61]  "Calling in sick without providing additional information does not provide sufficient notice under the FMLA."[62]

---

[57]*Bones v. Honeywell Int'l Inc*, 366 F.3d 869, 877, n. 2 (10th Cir. 2004).

[58]The Court recognizes that in *Tate v. Farmland Indus., Inc*, 268 F.3d 989, 997 (10th Cir. 2001), the Tenth Circuit found that the FMLA does not require an employee to specifically ask for benefits or expressly assert his rights under the FMLA.  However, the employer still needs to be on notice that the employee might qualify for FMLA benefits. *Id.; see also Howard v. Garage Door Group, Inc.,* 136 F. App'x 108, 114 (10th Cir. 2005) (finding that an employer must be on notice that the employee might qualify for FMLA leave before the employer is obligated to inform employee of his right to FMLA leave).

[59]29 C.F.R. § 825.302(c); *see also Bryant*, 75 F. App'x at 701.

[60]*Manuel v. Westlake Polymers Corp*., 66 F.3d 758, 764 (5th Cir. 1995); *see also Brohm v. JH Properties, Inc*., 149 F.3d 517, 523 (6th Cir. 1998) (citing *Manuel*, 66 F.3d at 764); *Blazier v. St. John Med. Ctr., Inc.*, 2006 WL 2599199, at *2 (N.D. Okla. Sept. 8, 2006) ("The critical question in determining whether an employee has satisfied her obligation to provide notice under the FMLA is 'whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005))).

[61]*de la Rama v. Illinois Dep't of Human Servs*., 541 F.3d 681, 687 (7th Cir. 2008) (citation omitted).

[62]*Id*. (citation omitted); *see also Blazier*, 2006 WL 2599199, at *3 (citations omitted); *Allender v. Raytheon Aircraft Co.*, 339 F. Supp. 2d 1196, 1205 (D. Kan. 2004).  In discussing a retaliation claim under the FMLA, the Tenth Circuit noted that "[t]he mere use of sick leave does not implicate the FMLA; rather, the FMLA comes into play when there is a serious health condition that prevents the employee from performing her work."  *Ney v. City of Hoisington, Kan*., 264 F. A'ppx 678, 682 (10th Cir. 2008) (citing 29 U.S.C. § 2612(a)(1)(D)).

In this case, the evidence demonstrates that Plaintiff called in and asked for a vacation day to take a personal sick day on the morning of February 2. On the evening of February 2, he called in to report his absence for the following work day, February 3. Plaintiff was seen by a doctor on February 5 and was given a doctor's note which provided that Plaintiff had been ill for two days.[63] Plaintiff filled out a return to work questionnaire in which he indicated his illness or injury was "bad sore throat, & conjistion [sic]." He also indicated that he had not requested nor been approved for FMLA leave related to this condition. This simply does not provide sufficient notice to Defendant that Plaintiff suffered from a serious health condition requiring FMLA leave.

Plaintiff contends that he suffered a panic attack in February and therefore his illness is covered by the FMLA. As noted above, however, there is no evidence that he informed his employer of this. Plaintiff claims that he told his supervisor exactly how he felt the morning of February 2. However, when questioned further in his deposition, he stated that he told his supervisor what he wrote down on his return to work questionnaire which was bad sore throat and congestion. Plaintiff gave no indication to Defendant that he had suffered from a panic attack the morning of February 2. Although Plaintiff argues that he gave notice as soon as reasonably possible, the Court cannot discern any time in which Plaintiff gave notice.

Plaintiff also argues that the fact that he explained his situation and asked for a vacation day to take a personal sick day was sufficient to put Defendant on notice that he was FMLA eligible.[64] He asserts that Defendant had plenty of reason to suspect that his absence might be covered by the

---

[63]Dr Kheen's notes indicate that Patterson complained of head congestion and fever. Dr. Kheen diagnosed Patterson with an upper respiratory infection and cold virus. During the doctor visit on February 5, Patterson did not complain of an anxiety attack or a heart attack.

[64]It appears as if Plaintiff asserts that he provided "constructive notice."

FMLA because he had used intermittent FMLA for anxiety attacks in the past. The Court disagrees. The fact that Plaintiff had used intermittent FMLA leave in the past tends to demonstrate that Plaintiff knew how to give his employer sufficient notice that he was suffering from a serious health condition and that he needed FMLA.[65] It also demonstrates that Defendant previously granted Plaintiff FMLA leave when Plaintiff indicated he needed it. On this occasion, when Plaintiff returned to work, he indicated that he had not requested nor had been approved for FMLA leave. On previous occasions, Plaintiff would indicate on his return to work questionnaire that he had requested or had been approved for FMLA leave. Here, the circumstances simply do not demonstrate that Plaintiff gave Defendant notice that he was suffering from a serious health condition that would entitle him to FMLA leave. Nor is there any indication that Defendant knew or should have known that Plaintiff suffered from a panic attack on February 2nd such that he would need an accommodation on the basis of a disability under the ADA. Because Plaintiff did not provide notice, a duty to not interfere with Plaintiff's rights was not triggered.[66] As such, Court finds that there is no genuine issue of material fact as to whether Plaintiff provided notice to Defendant and grants Defendant summary judgment on Plaintiff's FMLA interference claim.

---

[65]*See Allender*, 339 F. Supp. 2d at 1205-06 (considering an employee's prior background in seeking FMLA leave when determining whether she provided sufficient notice to her employer on the incident at issue in the case).

[66]*See Dreesen v. Denver Newspaper Agency*, 2010 WL 1348569, at *6 (D. Colo. Mar. 30, 2010) (concluding that the defendant could not interfere with the plaintiff's substantive rights under the FMLA because the plaintiff had not provided notice).

### *Retaliation Claim*

Plaintiff claims Defendant retaliated against him for taking FMLA leave.[67]  A retaliation claim under the FMLA is also subject to the *McDonnell Douglas* burden-shifting analysis.[68]  A prima facie case requires a plaintiff to demonstrate that (1) he engaged in protected activity; (2) the employer took an action that a reasonable employee would find materially adverse; and (3) a causal connection exists between the two.[69]

In this case, the first element is satisfied because Plaintiff engaged in protected activity when he took FMLA leave for his heart attack in September of 2006.  The second element is also satisfied because his termination in February of 2007 is an action that a reasonable employee would find materially adverse.  With respect to the third element, close temporal proximity between the protected conduct and the adverse action may support an inference of a causal connection, or retaliatory motive.[70]  Plaintiff was terminated less than one month after returning to work from extended FMLA leave.[71]  Because his termination was closely connected in time to his FMLA leave, he meets the third element of a prima facie case.

---

[67]To the extent Plaintiff attempts to assert a retaliation claim based on his alleged need for FMLA leave in February, there is no evidence that Plaintiff engaged in protected activity.  As previously noted, Plaintiff never requested nor indicated that he needed FMLA leave for his sickness on February 2nd and 3rd.  As such, he would fail to establish a prima facie case.

[68]*Metzler,* 464 F.3d at 1170.

[69]*Id.* at 1171.

[70]*Id.*

[71]The Court notes that the record is not entirely clear whether Plaintiff was on extended FMLA during the strike in October through December.  However, Plaintiff received a doctor's note in late December that he could return to work without restrictions as of January 1, 2007.  Plaintiff returned on January 5, 2007, and Defendant terminated him in early February 2007.

The burden now shifts to Defendant to provide a legitimate, nonretaliatory reason for Plaintiff's termination.[72] Defendant's reason that Plaintiff violated his last chance agreement when he failed to call a designated manager about his absence, less than two weeks after being reminded that he was on a last chance agreement, suffices as a legitimate reason for Plaintiff's termination.

Plaintiff must now present sufficient evidence demonstrating that there is a genuine dispute of material fact as to whether Defendant's reason for termination is pretextual.[73] "A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[74] A plaintiff typically makes a showing of pretext with: (1) evidence that defendant's stated reason is false; (2) evidence that defendant acted contrary to a written policy; and (3) evidence that defendant acted contrary to an unwritten policy or practice.[75]

Plaintiff contends that Defendant's reason is pretextual because (1) it is unworthy of belief; (2) he was treated more harshly than similarly situated employees; (3) Defendant acted contrary to its unwritten company police or practice; (4) Defendant acted contrary to its written policy, and (5) Defendant failed to accommodate him.

---

[72]*Id.* at 1172.

[73]*Id.*

[74]*Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) (citation and quotation omitted).

[75]*Kendrick v. Penske Transp. Servs, Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000).

Although several of Plaintiff's asserted reasons for pretext are not supported by the cited record,[76] the Court concludes that several issues may demonstrate that there is a factual dispute as to whether Plaintiff's termination was pretextual. In particular, it is not clear from the record how or when last chance agreements are actually enforced. Because it is not clear when last chance agreements are enforced, the Court cannot conclude whether Defendant had an unwritten policy or practice with respect to allowing several last chance agreements before termination. This, in turn, leads to the question of whether Plaintiff was treated more harshly than any similarly situated employees.[77] As such, the Court denies Defendant's motion for summary judgment on this claim.

**IT IS ACCORDINGLY ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 139) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 143) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's FMLA retaliation claim remains.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony (Doc. 162) is **DENIED AS MOOT AND WITHOUT PREJUDICE**. Because the Court granted Defendant's motion as to Plaintiff's ADA claims, Defendant's Motion to Exclude Expert Testimony appears irrelevant. If Defendant believes that its motion relates to any remaining issues in the case, Defendant is directed to refile the motion with an explanation as to how it relates to the remaining issues.

---

[76]The Court addressed the lack of evidence with respect to Plaintiff's failure to accommodate allegations above. There also does not appear to be any support that Defendant acted contrary to written policy.

[77]Several of the individuals do not appear to be similarly situated to Plaintiff. However, from the record, the Court concludes that there is a weak issue of fact as to whether Plaintiff was treated more harshly than similarly situated employees.

**IT IS SO ORDERED.**

Dated this 19th day of April, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT COURT